UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| In re | |
|---|---|
| Donald C. Kupperstein | Docket No.: 18-11772-LTS |
| | BANKRUPTCY APPEAL |
| Appellant | Chapter 7 |

OPENING BRIEF FOR APPELLANT
ON APPEAL FROM ORDERS OF THE BANKRUPTCY COURT
(AMENDED)

*For the Appellant:*
David G. Baker, Esq.
236 Huntington Avenue, Ste. 317
Boston, MA  02115
(617) 367-4260
BBO #634889

# Table of Contents

Basis of Appellate Jurisdiction................................................................................. 4
Issues Presented and Standard of Review .............................................................. 4
STATEMENT OF THE CASE .................................................................................. 4
SUMMARY OF THE ARGUMENT........................................................................... 7
ARGUMENT .............................................................................................................. 8
*The police power exception* ...................................................................................... *8*
*The statute*.................................................................................................................... *8*
*Dischargeability*............................................................................................................ *18*
*Whether EOHHS should be held in contempt for violating the automatic stay*.............*21*
CONCLUSION.......................................................................................................... 24
Certificate of Service............................................................................................... 24

# Table of Authorities

**CASES**

Alpern v. Lieb, 11 F.3d 689 (7th Cir. 1993) .......................................................... 8, 15, 17

AngioDynamics, Inc. v. BIOLITEC AG, 823 F. 3d 1, 7 (1st Cir. 2016) ............................ 9

Board of Governors of the Federal Reserve System v. MCorp. Financial Inc., 502 U.S. 32, 41
    (1991) ....................................................................................................................... 10, 11

Chao v. Hosp. Staffing Servs., Inc., 270 F.3d 374, 385 (6th Cir. 2001) ............................ 11

Davis v. Cox, 356 F. 3d 76 (1st Cir. 2004) ........................................................................ 12

Fleet Mortg. Group, Inc. v. Kaneb, 196 F. 3d 265, 269 (1st Cir. 1999)............................ 22

Hicks v. Feiock, 485 US 624 (1988) .................................................................................. 20

In re Atlas IT Export Corp., 761 F. 3d 177 (1st Cir. 2014) ............................................ 4, 21

In re Bartel, 395 BR 208 (Bankr. D. Mass. 2008) ............................................................ 8, 13

In re Birchall, 381 BR 13 (Bankr. D. Mass. 2008) ............................................................ 14

In re Birchall, 454 Mass. 837 (2009)................................................................................. 14

In re Birchall, 501 BR 142 (Bankr. D. Mass. 2013) ......................................................... 14

In re Bullard, 752 F. 3d 483 (1st Cir. 2014), *aff'd*, 135 S.Ct. 1686 (2015) ........................ 4

In re Cavanaugh, 271 BR 414, 423 (Bankr. D. Mass. 2001) ...................................... 12, 23

In re Cox, 274 BR 13 (Bankr. D. Maine 2002), ................................................................ 12

In re Dingley, 852 F.3d 1143 (9th Cir. 2017)................................................................. 8, 17

In re Gandy, 327 B.R. 796, 803 (Bankr. S. D. Tex. 2005) ................................................ 11

In re Gruntz, 202 F. 3d 1074 (9th Cir. 2000)................................................................. 12, 23

In re Hamilton, 540 F.3d 367 (6th Cir. 2008) .................................................................. 12

In re Herrera, 589 BR 444 (Bankr. App. Panel, 1st Cir. 2018) ........................................ 23

In re Kave, 760 F. 2d 343 (1st Cir. 1985) ...................................................................... 9, 20

In re McKenna, 566 BR 286 (Bankr. D. R. I. 2017).......................................................... 15

In re McMullen, 386 F.3d 320, 325 (1st Cir.2004).......................................................... 11

In re Middlesex Power Equipment & Marine, Inc., 292 F. 3d 61 (1st Cir. 2002) ............ 13

In re Miller, 113 BR 98, 104 (Bankr. D. Mass. 1990)....................................................... 20

In re Noll, 172 B.R. 122 (Bkrtcy.M.D.Fla. 1994) ............................................................. 20

In re Nortel Networks, Inc., 669 F.3d 128, 139-140 (3rd Cir. 2011)................................ 11

In re Odom, 570 BR 718 (Bankr. ED PA 2017) ................................................................ 22

In re Peckham, 442 BR 62, 80 (Bankr. D. Mass. 2010) ........................................................ 20

In re Sayeh, 445 BR 19, 27 (Bankr. D. Mass. 2011) .......................................................... 22

In re Soares, 107 F.3d 969, 973 (1st Cir. 1997) ................................................... 4, 8, 13

In re Spookyworld, Inc., 346 F.3d 1, 9 (1st Cir. 2003) .................................................. 11

Internal Revenue Service v. Murphy, 892 F.3d 29 (1st Cir., 2018) ................................... 17

IRS v. Murphy, 892 F. 3d 29 (1st Cir. 2018) .................................................................. 22

Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) ......................... 20

Law v. Siegel, 134 S. Ct. 1188 (2014) ............................................................................ 13

Leahy v. L. 1526, Am. Fed. Of St., County, & Mun. Emp., 399 Mass. 341 (1987)............... 20

Matter of Currency Exchange, Inc., 762 F.2d 542, 555 (7th Cir. 1985) ............................ 10

McCoy v. Massachusetts Institute of Technology, 950 F. 2d 13, 19 (1st Cir. 1991) ............ 17

Midlantic Nat'l Bank v. New Jersey Dep't of Envir. Protection, 474 US 494 (1986)............. 16, 22

Parker v. United States, 153 F.2d 66, 70 (1st Cir. 1946) ................................................. 9, 13

Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)............ 22

State of Missouri v. United States Bankruptcy Court, 647 F.2d 768, 776 (8th Cir. 1981) ..... 10

Suarez v. Barrett (In re Suarez), 400 B.R. 732, 736-37 (9th Cir. BAP 2009)..................... 21

Taggart v. Lorenzen, 139 S. Ct. 1795 (June 3, 2019) ...................................................... 22

United States v. Ron Pair Enterprises, Inc., 489 US 235, 24 (1989)................................... 10

United Student Aid Funds, Inc. v. Espinosa, 559 US 260 (2010) ...................................... 23

US v. Pleau, 680 F. 3d 1, 6 (1st Cir. 2012) .................................................................... 12

Word v. Commerce Oil Co., 847 F.2d 291, 295 (6th Cir. 1988)......................................... 10

*STATUTES*

11 USC §105 ..................................................................................................................... 13

11 USC §362 ..................................................................................................................... 4

11 USC §362(a)................................................................................................................. 8

11 USC §523 ..................................................................................................................... 18

28 USC §1334 ................................................................................................................... 4

28 USC §1334(c)(1)........................................................................................................... 13

28 USC §1408 ................................................................................................................... 4

28 USC §157(a)................................................................................................................. 4

28 USC §158 ..................................................................................................................... 4

M.G.L. c. 224, §15............................................................................................................. 14

*RULES*

Fed. R. Bankr. P. 7001 ..................................................................................................... 13, 18

## Basis of Appellate Jurisdiction

This is an appeal from orders/decisions of the Bankruptcy Court for the District of Massachusetts granting the appellees' motion for an order granting relief from the automatic stay and denying Kupperstein's motions for contempt for violations of the automatic stay. Such orders are final and immediately appealable pursuant to 28 USC §158(a)(1) and (b). In re Atlas IT Export Corp., 761 F. 3d 177, 182 (1st Cir. 2014), *citing, inter alia*, In re Bullard, 752 F. 3d 483 (1st Cir. 2014), *aff'd,* 135 S.Ct. 1686 (2015). The bankruptcy court had jurisdiction pursuant to 28 USC §1334 by reference from the District Court pursuant to 28 USC §157(a). Venue is appropriate pursuant to 28 USC §1408 since Kupperstein lives in Massachusetts. The order was entered on August 13, 2018, and the Notice of Appeal was filed the same day. After Kupperstein's original brief was filed, the appellees filed motions to dismiss based on the "fugitive disenfranchisement doctrine", which the court granted. Kupperstein appealed the dismissal to the First Circuit, which reversed and remanded on November 15, 2019. By agreement of the parties, two appeals have been consolidated under one docket number. This brief will address both appeals.

## Issues Presented and Standard of Review

The issue presented is whether the bankruptcy court was correct in granting partial relief from the automatic stay of 11 USC §362 to the appellants on the basis of the so-called "police power" exception to the stay provided in §362(b)(4) to enforce a money judgment against Kupperstein, and whether the bankruptcy court was correct that the appellees did not violate the automatic stay since it did not apply.

This court reviews findings of fact for clear error and conclusions of law *de novo*. Interpretation of 11 USC §362 is a question of law which the court reviews *de novo. See* In re Soares, 107 F. 3d 969, 973 (1st Cir. 1997) ("To the extent that the threshold inquiries in this case involve questions of statutory interpretation, we exercise plenary review.")

## STATEMENT OF THE CASE

The Executive Office of Health and Human Services of the Commonwealth of Massachusetts (hereinafter "EOHHS") brought an action in the Suffolk Superior Court, docket number 1584CV02036, on July 7, 2015, to satisfy a debt of $191,746.79 owed to the Commonwealth by the Estate of Fred W. Kuhn as a result of Kuhn's receipt of MassHealth benefits. The defendants were Thomas Sheedy, Donald Kupperstein (the debtor/appellant herein), and Carol Thibodeau (the Personal Representative of the probate estate). At the time, Ms. Thibodeau was the only known heir of Mr. Kuhn. Subsequently, Ms. Thibodeau resigned as Personal Representative and attorney Irene Schall was appointed. In that action, Thibodeau agreed to a judgment against herself solely as Personal Representative (and not individually) for the aforementioned $191,746.79. Arguably, the EOHHS has all the relief it should be entitled to and will receive (or has received) once the property is sold – i.e., its lien has been paid in full, more or less[1].

Prior to that case, on January 21, 2014, EOHHS had filed a petition in the Probate and Family Court of Bristol County, docket number BR14P0127EA, for a formal probate of the will of Fred Kuhn, who died on September 17, 2013; the defendants (so to speak) were the same as in the Suffolk Superior Court action. A decree and order of formal probate issued on April 3, 2014. Thereafter, EOHHS filed a complaint for contempt on June 13, 2017, against Sheedy and Kupperstein, apparently for failure to comply with the orders of the Bristol Probate Court.

EOHHS' overarching goal was to obtain payment of the aforementioned debt out of any available assets of the Estate of Fred W. Kuhn ("the Estate"), including property located at 346 Reservoir Street, Norton, Massachusetts ("the property" or "the home"). Why EOHHS proceeded in both courts is unclear, but not necessarily relevant, although it appears to be blatant forum-shopping, as argued within. Schall's goal is essentially the same.

There was a third case in Bristol Superior Court, docket number 1573CV00656, also filed on July 7, 2015, brought by an individual who wanted to buy the property from Sheedy (who is

---

[1] Note, however, that the bankruptcy court's order on relief from stay expressly refused to allow the appellees to collect any deficiency for the lien. That part of the order may have been abrogated, implicitly, by the bankruptcy court's decision that the stay did not apply due to the police power exception.

apparently the beneficiary of the realty trust that bought the property from Schall's predecessor, Carol Thibodeau), naming Sheedy, Kupperstein, and other parties, except that the EOHHS was not named as a party.

The named defendants in the actions brought by EOHHS include Donald C. Kupperstein, the debtor in the bankruptcy case and appellant herein, and Carol Thibodeau, Kuhn's daughter and, at the time, Personal Representative of the probate estate[2]. The Suffolk Superior complaint alleges, in essence, that Kupperstein improperly assisted in the conveyance of Kuhn's home by Thibodeau, who was (so far as is known) the only devisee of the probate estate, to himself and/or others. For no discernable reason, sale of the property took an extraordinarily long time (assuming that it has been sold by now). Accordingly, the EOHHS has pursued Kupperstein and others, including Thibodeau, for repayment of the probate estate's debt and for monetary damages related to the post-petition contempt findings in the probate court and in a Land Court case that Kupperstein had filed but was dismissed.

After Kupperstein filed the present bankruptcy case, he removed the Bristol Probate and Suffolk Superior Court matters to the bankruptcy court pursuant to 28 USC §1442. On motion of the appellees, the bankruptcy court remanded the matters back to the state courts, but noted that the cases remained subject to the automatic stay to the extent that it is applicable. Eventually, the appellees filed motions for relief from stay, which were granted over Kupperstein's objections.

Before removal, EOHHS attempted to persuade the state courts – both the Probate Court and the Superior Court – that those courts had jurisdiction to determine whether the automatic stay applied and whether, by listing his interest in Kuhn's home in his bankruptcy papers, he had committed a civil contempt. The probate court then found that it had such jurisdiction and also found Kupperstein in contempt of the pre-petition order that, by listing his property interest in his

<hr/>

[2] She has since resigned and been replaced by appellee and attorney Irene Schall, whose husband, Roger Stanford, also an attorney, has many years of experience in bankruptcy matters.

bankruptcy schedules[3], he violated that order. The Superior Court rejected EOHHS' argument about the applicability of the automatic stay, however.

With respect to the Petition in the Bristol Probate Court, referenced above, in November 2016, the Probate Court granted EOHHS's Motion for Summary Judgment on its Petition and ordered Kupperstein and Thomas Sheedy (Trustee of the nominee trust that was Grantee of the deed to the property that was executed by Thibodeau) to pay to EOHHS rent they had collected. Specifically, the Court ruled (pre-petition) that the property located at 346 Reservoir Street, Norton, Massachusetts, remained an asset of the Probate Estate of Fred W. Kuhn, and that Ms. Thibodeau (the personal representative at the time) had executed an invalid deed and improperly transferred the property to Sheedy. The Court also ordered that, in order to compel payment of the claim by EOHHS and satisfy the debt owed by the Estate to the Commonwealth in the amount of $191,746.79, Ms. Thibodeau shall make all reasonable efforts to sell the subject property in cooperation with EOHHS. At the time, EOHHS alleged that it had yet to receive any amount in repayment of the balance owed by the Estate, although upon information and belief the property has been sold and EOHHS' lien paid.

The Suffolk Superior Court, however, had entered judgment that the deed was valid and denied the efforts of EOHHS to rescind the deed. No appeal was taken from that decision. That court also absolved Kupperstein of any fraud in the transaction, among other things.

## SUMMARY OF THE ARGUMENT

Statutory interpretation begins with the plain language of the statute. Where it is not ambiguous and does not lead to an absurd result, the inquiry ends. Here, the bankruptcy court ignored the plain language of the so-called "police power" exception, which is abundantly clear that the exception does not extend to collection of money judgments, no matter how that judgment

---

[3] On the petition date, Kupperstein was represented by David Madoff, who is, himself, a chapter 7 trustee. There is no reason to believe that he was not fully aware of the facts, given that the litigation is what prompted the bankruptcy case, and did the appropriate investigation before filing the schedules. Similarly, neither the United States Trustee nor the chapter 7 trustee assigned to the case have taken action against Kupperstein, which also warrants an inference that there were no issues and it appears that the statute of limitations has passed.

arose.  Case law is overwhelmingly against the interpretation advanced by the appellees and adopted by the bankruptcy court.  Accordingly, the bankruptcy court should be reversed.  In addition, since the stay was in effect at all relevant times, the bankruptcy court erred in absolving EOHHS of contempt for stay violations.

In reviewing this argument, the court is asked to note that the exhibits attached to the motion for a say pending appeal should be consulted as may be needed.

<u>ARGUMENT</u>

*The police power exception*

The relief granted to appellees EOHHS and Schall was limited to the assessment by the state courts against Kupperstein of any restitution and sanction amounts (including under Mass. Gen. Laws ch. 231 §6F), and further proceedings to enforce and collect those amounts, but did not extend to collecting from Kupperstein any part of the EOHHS lien.  In granting that relief, the court did not set forth its reasoning in any detail, but cited to <u>In re Dingley</u>, 852 F.3d 1143 (9th Cir. 2017), and <u>Alpern v. Lieb</u>, 11 F.3d 689 (7th Cir. 1993).  It appears, therefore, that the bankruptcy court is of the opinion that collection of judgment debts for restitution and sanctions are excepted from the automatic stay pursuant to the so-called "police power" exception of §362(b)(4) and/or are nondischargeable, although dischargeablity was not a question presented at that time.   For the following reasons, Kupperstein respectfully suggests that those cases are distinguishable and/or inconsistent with First Circuit and Supreme Court precedent, as argued herein.

*The statute*

" Like a shade tree, the automatic stay which attends the initiation of bankruptcy proceedings, 11 USC §362(a) (1994), must be nurtured if it is to retain its vitality."   <u>In re Soares</u>, 107 F. 3d 969, 973 (1st  Cir. 1997).  As noted by bankruptcy judge Rosenthal in <u>In re Bartel</u>, 395 BR 208 (Bankr. D. Mass. 2008):

>   The so called "automatic stay' is actually a collection of eight statutory stays set forth in paragraphs (1) through (8) of subsection 362(a). 11 U.S.C. § 362(a) (1)-(8).  It states

that the filing of a petition in bankruptcy operates as a stay of, among other things, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case," § 362(a)(6), and "the commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other action or proceeding against the debtor ... to recover a claim against the debtor that arose before the commencement of the case," § 362(a)(1). Exceptions from the automatic stay are set forth in subsection (b). Some exceptions pertain only to certain parts of the stay; for example, the police power exclusion in § 362(b)(4) applies only to those parts of the stay set forth in paragraphs (1), (2), (3), or (6), and therefore a governmental authority operating under the police power exception is still bound by parts (4), (5), (7), and (8) of the automatic stay. The criminal exception, however, applies to all parts of the stay. One acting within the scope of the criminal exception is not bound by any part of the stay.

Id. at 213 (footnotes omitted). The actions by EOHHS and Schall in the Bristol courts are not criminal matters; the complaints for contempt explicitly designated them as civil, and there is no evidence that the Bristol Probate Court provided any of the protections required in criminal proceedings, such as Miranda warnings and a public defender. *See* In re Kave, 760 F. 2d 343 (1st Cir. 1985).

The controlling bankruptcy case on this issue is Parker v. United States, 153 F.2d 66, 70 (1st Cir. 1946). The court noted that

The Supreme Court has had many occasions to emphasize the importance of the distinction between a proceeding in civil contempt and one in criminal contempt. Proceedings in civil contempt are between the original parties and are instituted and tried as a part of the main cause. Though such proceedings are "nominally those of contempt", the real purpose of the court order is purely remedial — to coerce obedience to a decree passed in complainant's favor, or to compensate complainant for loss caused by respondent's disobedience of such a decree.

Id. at 69 (citations omitted). The court also noted that although the sanction is for contempt of court, it is the "complainant" that is the real party in interest. Id. at 71. The complainant in Parker was the United States. Here, as in Parker, "There is no doubt that the contempt proceeding in the case at bar was instituted and maintained throughout as one of civil contempt. " Id. at 71. Ultimately, the court reversed the district court's determination that the contempt debt was not dischargeable, and remanded for further proceedings. While Parker pre-dated the present bankruptcy code, it is still good law, having been cited in AngioDynamics, Inc. v. BIOLITEC AG, 823 F. 3d 1, 7 (1st Cir. 2016).

The "police power" exception is found in Sub-section (b)(4) of §362, and provides:

**(4)** under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, **including the enforcement of a judgment other than a money judgment**, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

(emphasis added).

Statutory interpretation begins with the language of statute itself, and where the language is plain, the sole function of the courts is to enforce it according to its terms. United States v. Ron Pair Enterprises, Inc., 489 US 235, 241 (1989). The language of §362(b)(4), quoted above, is crystal clear – the "police power" exception <u>does not</u> apply to the collection of a money judgment. Given that clarity, it is inexplicable that the bankruptcy court held otherwise and permitted the appellees to enforce – by means of incarceration if necessary – the judgments against Kupperstein, which judgments are presumptively dischargeable, although the appellees are trying to convince the bankruptcy court not to discharge them, among other things.

Attempts to collect money are not within the "police power" exception to the automatic stay, as the plain language of the statute makes clear. That exception applies to a governmental unit's enforcement of laws "affecting health, welfare, morals, and safety, 'but not to regulatory laws that directly conflict with the control of the res or property by the bankruptcy court.'" Matter of Currency Exchange, Inc., 762 F.2d 542, 555 (7ᵗʰ Cir. 1985) (*quoting* State of Missouri v. United States Bankruptcy Court, 647 F.2d 768, 776 (8ᵗʰ Cir. 1981)). "Congress clearly intended for the police power exception to allow governmental agencies to remain unfettered by the bankruptcy code in the exercise of their regulatory powers." Word v. Commerce Oil Co., 847 F.2d 291, 295 (6ᵗʰ Cir. 1988). Thus, a proceeding by a governmental unit enforcing such laws may proceed to entry of a money judgment, although actions to *collect* such a judgment fall outside the exception and are stayed. *See generally* Board of Governors of the Federal Reserve System v. MCorp. Financial Inc., 502 U.S. 32, 41 (1991) (stay applies to agency action to enforce final agency order that affects Bankruptcy Court's control over property of estate, but not to agency's making of final order).

To determine whether proceedings fall within the police or regulatory power exception to the automatic stay, "courts have applied two 'related, and somewhat overlapping' tests: the pecuniary purpose test and the public policy test."  *See* <u>Chao v. Hosp. Staffing Servs., Inc.</u>, 270 F.3d 374, 385 (6th Cir. 2001) *and* <u>In re Spookyworld, Inc.</u>, 346 F.3d 1, 9 (1st Cir. 2003) (*citing* <u>Board of Governors, *supra*)</u>. "The pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health."  <u>In re Nortel Networks, Inc.</u>, 669 F.3d 128, 139-140 (3rd Cir. 2011).  "The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights."  *Id.* at 140.  Thus, "[i]f the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies. If, on the other hand, the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable." *Id.*; *see also* <u>In re Gandy</u>, 327 B.R. 796, 803 (Bankr. S. D. Tex. 2005).  The pecuniary purpose and public policy tests both "contemplate that the bankruptcy court, after assessing the totality of the circumstances, [will] determine whether the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare, or represents a governmental attempt to recover from property of the debtor estate, whether on its own claim, or on the nongovernmental debts of private parties."  <u>In re McMullen</u>, 386 F.3d 320, 325 (1st Cir.2004); *see also* <u>Hosp. Staffing</u>, 270 F.3d at 389 (*supra*, stating that the tests "are designed to sort out cases in which the government is bringing suit in furtherance of either its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors").  Both <u>Spookyworld</u> and <u>McMullen</u> involved state actors.

The actions by Schall and EOHHS are not regulatory in nature.  Instead, they are "pecuniary" because they are attempting to collect a debt allegedly owed by Kupperstein – a debt that he never incurred because he had no relationship with EOHHS or received any money from it or from the Probate Estate.  They merely want to collect their attorney fees and costs, which presumptively is dischargeable.  Thus the police power exception does not apply.

The limited relief granted by the bankruptcy court appears to have been motivated by notions of comity with the state courts – that federal courts should not interfere with the decisions and orders of state courts, or their enforcement. Kupperstein respectfully suggests that that motivation, while well intended, is misplaced. Because of the Supremacy Clause of the Constitution, federal law is the supreme law of the land and comity cannot overcome that fact. US v. Pleau, 680 F. 3d 1, 6 (1st Cir. 2012) (criminal case). Unless Congress has legislated otherwise, federal courts are not statutorily obligated to defer to state courts in deciding federal questions[4]. For example, in In re Cavanaugh, 271 BR 414, 423 (Bankr. D. Mass. 2001), *quoting extensively from* In re Gruntz, 202 F. 3d 1074 (9th Cir. 2000), bankruptcy Judge Feeney appears to have agreed with the Gruntz court that federal courts are not bound, nor stripped of jurisdiction, by state court modifications of the automatic stay since state courts do not have jurisdiction to do so, and the *Rooker-Feldman* doctrine did not require otherwise[5]. *See also* In re Hamilton, 540 F.3d 367 (6th Cir. 2008).

Similarly, in In re Cox, 274 BR 13 (Bankr. D. Maine 2002), bankruptcy Judge Haines had before him a rather complex set of issues relating to a divorce court judgment. In the closing paragraph, he observed:

> And fifth, on another note altogether, I am well aware that today's decision might be seen as destructive of comity between state and federal courts. On that point, I differ. It is this court's fundamental responsibility to speak and apply the law. Vague notions of comity cannot override that charge. Moreover, today's result speaks no disrespect for the state court. The state court judge and case management officer undertook and completed Herculean tasks. Their work was completed with Cox's bankruptcy underway. Bankruptcy changes things, and it became this court's job to determine how bankruptcy affected the provisions of the divorce decree at issue here. That job is done.

Id. at 36, *aff'd in part and reversing and remanding in part on other grounds,* Davis v. Cox, 356 F. 3d 76 (1st Cir. 2004).

Ultimately, it bears recalling that bankruptcy courts cannot grant relief that conflicts with the bankruptcy code or other statute, and neither comity, nor equity, nor 11 USC §105 changes

---

[4] One area where bankruptcy courts are obligated to defer to state law, absent a contrary federal law, is the definition of "property rights". See Butner v. United States, 440 US 48 (1979).
[5] *Cf.* Isaacs v. DBI-ASG Coinvestor Fund, III, LLC, 895 F.3d 904 (6th Cir, 2018) (stating that state courts may interpret the bankruptcy discharge so long as they do so correctly).

that.  In <u>Law v. Siegel</u>, 134 S. Ct. 1188 (2014), the court considered a case where the bankruptcy court had surcharged a debtor's exemptions in order to compensate the trustee for what seems to have been rather egregious conduct by the debtor.  The Supreme Court made it clear that since nothing in §522 or the code, generally (including 11 USC §105), provides for surcharging exemptions, the surcharge was improper, and thus reversed and remanded.  The court made it abundantly clear that §105 is not a source of authority for a surcharge that conflicts with a debtor's statutory right to claim exemptions.  Except for the provisions regarding mandatory abstention in 28 USC §1334(c)(1), there is nothing that *requires* a bankruptcy court to abstain in the interests of comity.  Abstention is wholly discretionary.  *See* <u>In re Middlesex Power Equipment & Marine, Inc.</u>, 292 F. 3d 61 (1st Cir. 2002).

Nothing in the present case justifies abstention, whether in the name of comity or otherwise.  The state court's civil contempt judgments, most of which came after the bankruptcy petition was filed and thus violated the automatic stay and are void, <u>In re Soares</u>, 107 F. 3d 969 (1st Cir. 1997), are final and nothing remains to be done, so far as the undersigned can tell, except to execute or enforce the judgments by coercing the payment of money and/or incarceration until paid[6].  Comity does not justify letting the state court enforce a judgment that is presumptively dischargeable unless the bankruptcy court decides that it is NOT dischargeable in the proper procedural context required by Fed. R. Bankr. P. 7001 – an issue that is not presented at this time and is not waived;  manifestly the state court cannot determine whether a debt of this nature is dischargeable unless it does so correctly, *see* fn. 5, and the appellees have filed dischargeability complaints, thus acknowledging the bankruptcy court's jurisdiction over the issue.

That the present issue arises in the context of civil contempt judgments does not change the analysis because the contempt judgment(s) at issue are *civil* in nature, initiated by EOHHS.  A *criminal* contempt would be excepted from the automatic stay, *see* <u>Bartel</u>, *supra*, so long as it did not compel payment of money;  *see also* <u>Parker v. United States</u>, 153 F.2d 66, 70 (1st Cir. 1946).

---

[6] That said, there are appeals pending before the Massachusetts Appeals Court of the probate court's orders.

But a civil contempt, as is the case here, is not excepted because it is a debt collection device – i.e., a "pecuniary" motivation by the appellees to collect money it believes is owed to it.

There is great danger in the bankruptcy court's holding otherwise. This is because in Massachusetts, enforcement of a judgment is accomplished by "supplementary process". *See* M.G.L. c. 224, §15; *see also* <u>In re Birchall</u>, 454 Mass. 837 (2009). In <u>Birchall</u>, the court essentially was considering Birchall's petition for a writ of habeas corpus to gain his release from prison. He had been found in contempt for failing or refusing to pay a civil judgment. The court took the opportunity to extensively discuss supplementary process and the standards to be applied in determining whether the judgment debtor had the ability to pay the judgment; absent a finding that he could, the supplementary process action is to be dismissed. Otherwise, the judgment debtor can be confined to a jail pending a hearing every thirty days to make the determination of ability to pay. Birchall had been jailed for about two years.

Interestingly, the dispute between Birchall and the creditor spilled over into the bankruptcy court. *See* <u>In re Birchall</u>, 501 BR 142 (Bankr. D. Mass. 2013). He filed two bankruptcy petitions in 2007, while the aforementioned supplementary process action was in process. In the cited decision from a 2012 case, which sets forth the pertinent facts, bankruptcy Judge Hillman found that the debt at issue was non-dischargeable because of fraud (not present in this case, as the Suffolk Superior court found). In case number 07-17294, Birchall filed a motion requesting that bankruptcy Judge Hillman order his immediate release from incarceration resulting from the supplementary process action, but Judge Hillman denied the motion and abstained. <u>In re Birchall</u>, 381 BR 13 (Bankr. D. Mass. 2008). Judge Hillman noted that in a prior case, bankruptcy Judge Feeney had *granted* Birchall's motion subject to certain conditions. When Birchall later moved to amend the order to remove the conditions, Judge Hillman abstained and dismissed the case, but "found that although I continued to be concerned about whether the Debtor's incarceration for civil contempt violated the automatic stay, in the end it was in the best interest of all parties to have this matter decided in state court." <u>Id</u>. at 16.

The danger referred to above arises because supplementary process, and the resulting contempt judgment (if applicable), is used by creditors to enforce *regular* (i.e., non-contempt) money judgments. In Birchall, *supra*, the judgment creditor was an individual. Permitting collection of debts just because they involve a civil contempt finding is contrary to the plain language of the bankruptcy statute, which has no exceptions to its prohibition of collecting money judgments by governmental entities, and would result in nearly every debtor in bankruptcy being subject to being forced to pay a dischargeable debt on pains of incarceration.

Admittedly the issues in the present case do not explicitly involve a supplementary process action, apparently (although arguably they should), but they do involve contempt judgment(s) for not paying a compensatory money judgment of the Bristol Probate Court (which judgment appears to have violated the automatic stay and thus is void). It seems to be a distinction without a difference. The Bristol Probate Court's judgment is not a criminal contempt and thus Kupperstein should be protected from debt collection by the automatic stay.

The point of the foregoing is that at least *some* courts in this circuit have doubts about whether civil contempt enforcement actions are excepted from the automatic stay, and properly so. In fact, one bankruptcy court has held that actions to enforce a money judgment are <u>not</u> excepted from the automatic stay. <u>In re McKenna</u>, 566 BR 286 (Bankr. D. R. I. 2017). That case is startlingly similar to the present case. In <u>McKenna</u>, the Rhode Island Superior Court had imposed a Rule 11 sanction against McKenna, payable to the creditor. After a series of hearings that resembling Massachusetts' supplementary process, the Superior Court found that McKenna had the ability to pay the judgment notwithstanding his protestations to the contrary, and threatened him with incarceration. He made one payment on the judgment, but then filed a chapter 13 case.

The creditor sought relief from stay and argued that the contempt judgment was excepted from the automatic stay by the "police power" exception of §362(b)(4). After considering a number of decisions from other courts, including <u>Alpern v. Lieb</u>, 11 F.3d 689 (7th Cir. 1993), cited by the bankruptcy court in this case, bankruptcy Judge Finkle disagreed:

> Here, the Monetary Sanction was imposed over two years ago and the recent State Court proceedings, leading up to Mr. McKenna's bankruptcy filing, had advanced to the stage of

enforcement and collection of that sanction judgment. The plain and unambiguous reading of Bankruptcy Code § 362(b)(4) is that it expressly encompasses within the stay exception afforded governmental units "the enforcement of a judgment *other than a money judgment.*" (emphasis added); *see In re First Alliance Mortg. Co.,* 263 B.R. 99, 114 (9th Cir. B.A.P. 2001) (finding that a state court restitution action for violation of state consumer protection laws "fits the narrow exception of § 362(b)(4) for fixing damages for violations of the consumer laws .... However, collection and enforcement of restitution claims must proceed according to normal bankruptcy procedures, and are stayed."); *In re Mohawk Greenfield Motel Corp.,* 239 B.R. 1, 6 (Bankr. D. Mass. 1999) ("Simply put, action by a governmental unit to enforce its police and regulatory powers is excepted from the automatic stay so long as the action is not to enforce a money judgment."). Otherwise, allowing the enforcement of monetary judgments under § 362(b)(4) "would give the governmental unit an unfair advantage over other creditors, would effectively subvert the scheme of priorities set forth in [Bankruptcy Code] section 507 and would effectively deny to the debtor the benefits of discharge." *Collier on Bankruptcy* ¶ 362.05 (Alan N. Resnick & Henry J. Sommers eds.

Id. at 289 – 290 (footnote omitted). The Ninth Circuit BAP reached essentially the same conclusion in In re First Alliance Mortg. Co., *supra*, in which the Commonwealth of Massachusetts was the appellant:

The Commonwealth's state court action for alleged violations of the consumer protection laws was exempt in its entirety from the automatic stay. Therefore, we REVERSE that portion of the judgment which denied relief to the Commonwealth on its restitution, civil penalties and attorneys' fees claims, for purposes of obtaining judgment, **but not enforcement of such claims**.

(emphasis added). Among other cases, the BAP cited Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection, 474 US 494, 503 (1986), in which the court said:

The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as "one of the fundamental debtor protections provided by the bankruptcy laws." S. Rep. No. 95-989, p. 54 (1978); H. R. Rep. No. 95-595, p. 340 (1977). Despite the importance of § 362(a) in preserving the debtor's estate, Congress has enacted several categories of exceptions to the stay that allow the Government to commence or continue legal proceedings. For example, **§ 362(b)(5) permits the Government to enforce "nonmonetary" judgments against a debtor's estate**. It is clear from the legislative history that one of the purposes of this exception is to protect public health and safety:

"Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, *environmental protection,* consumer protection, *safety, or similar police or regulatory laws,* or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." H. R. Rep. No. 95-595, *supra,* at 343 (emphasis added); S. Rep. No. 95-989, *supra,* at 52 (emphasis added).

(emphasis added and footnote omitted). Because Midlantic pertained to whether a trustee may abandon property of the estate pursuant to §554(a) in contravention of state laws or regulations designed to protect the public's health or safety, the foregoing language is dicta. But it is the

Supreme Court's dicta, which should be respected.  McCoy v. Massachusetts Institute of Technology, 950 F. 2d 13, 19 (1st Cir. 1991).  Kupperstein is unaware of any subsequent decisions that have weakened that dicta.  On the contrary:  the First Circuit recently cited it in Internal Revenue Service v. Murphy, 892 F.3d 29 (1st Cir., 2018) – a case that pertained to sanctions for discharge injunction violations by the IRS, which affirmed sanctions against the IRS.  Midlantic is still good law and relevant to this case.

To the extent that In re Dingley, 852 F.3d 1143 (9th Cir. 2017), and Alpern v. Lieb, 11 F.3d 689 (7th Cir. 1993) , reach a different conclusion[7], they are wrong and conflict with First Circuit and Supreme Court precedent.  Dingley does not cite any decisions outside of the 9th Circuit other than Alpern, and in footnote 4, noted that it had "found no published circuit court opinions addressing the application of the government regulatory exception to sanctions proceedings like the one here."  Dingley has not been cited outside of the 9th Circuit until this case, so far as the undersigned can tell.  Aside from not being binding, it seems to be poor precedent to rely on given the contrary precedent in this Circuit.

Alpern is similarly a weak foundation for the bankruptcy court's decision.  In that case, the appellant was facing Rule 11 sanctions for filing a frivolous lawsuit.  Like Dingley, the court "found no federal appellate decision on the question" of whether a proceeding to impose rule 11 sanctions is exempt from the automatic stay pursuant to 11 USC §362(b)(4).  It is odd that the Alpern court apparently could not find Midlantic, supra, which was decided in 1986 – seven years before Alpern.  Ultimately, the Alpern court stated that "the fact that the sanction is entirely pecuniary does not take it out of section 362(b)(4)."  Given the plain language of the statute, supra at page 6, that conclusion is plainly wrong – collection of money judgments is not excepted from the reach of the automatic stay, even if they are for Rule 11 sanctions in a state court.  In re McKenna, 566 BR 286 (Bankr. D. R. I. 2017).  Midlantic is quite clear in holding that the "police

---

[7] In Porter v. Nabors Drilling USA, LP, 854 F. 3d 1057 (9th Cir. 2017, the ninth circuit appears to have disagreed with Alpern.

power" exception applies only to "nonmonetary" judgments in favor of governmental units. Collection of a monetary judgment is not excepted, even one in favor of a governmental unit[8].

The bankruptcy court's conclusion to the contrary is a clear error of law and should be reversed.

*Dischargeability*

Whether the alleged debt to the appellees is dischargeable was not expressly considered by the bankruptcy court, which is prejudicial error because it resulted in the government being allowed to collect a presumptively dischargeable debt, but the appellees may be expected to raise it, so it will be addressed, albeit without prejudice to the due process requirements of Fed. R. Bankr. P. 7001.

Not all debts are dischargeable. An exclusive list of non-dischargeable debts is found in 11 USC §523. *See* In re Bartel, 395 BR 208 (Bankr. D. Mass. 2008). EOHHS and Schall have argued that the debt(s) at issue are not dischargeable, and have filed a complaints to deny discharge or determine dischargeability. Although set forth in several counts and citing various statutory provisions, the allegations generally allege fraud, deceit and/or misrepresentation. The problem with that is that the Suffolk Superior Court, in an action brought by the EOHHS, the court (Lauriat, J.) stated:

> In order to prevail on a claim of fraud, a plaintiff must prove that the defendant "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing [the plaintiff] to act thereon, and that [the plaintiff] relied upon the representation as true and acted upon it to his damage." *Macoviak v. Chase Home Mortgage Co.,* 40 Mass. App. Ct. 755, 760 (1996) (internal quotations and citations omitted). In this case, there is no evidence that the Defendants made any statements to HHS concerning the sale of the Property; the only false representation alleged is by the Defendants to Thibodeau. HHS appears to rely on 130 CMR 515.009 and 130 CMR 515.010 in support of its claim, which respectively authorize HHS to recover damages for "intentional false statements or fraudulent acts made in connection with obtaining medical benefits" and to do so "regardless of who was responsible and whether or not there was fraudulent intent." However, these regulations cannot relieve HHS of its underlying burden to present at least some evidence of a false representation made to HHS, upon which HHS relied. The summary judgment record being devoid of any evidence related to such representation or

---

[8] While it may seem counterintuitive, appellee Schall should be a deemed a government actor since she is acting as an officer of the Probate Court in performing her duties as Personal Representative.

reliance, there are no genuine issues of material fact as to Count VI and the Defendants are entitled to judgment as a matter of law on that count. See *Kourouvacilis v. General Motors Corp.,* 410 Mass. 706, 711(1991) ("A complete failure of proof concerning an essential element of the [plaintiff s] case renders all other facts immaterial").

No appeal was taken from that order.  Notably, the court did not reach the question of whether Kupperstein obtained any medical benefits from EOHHS;  indisputably, he did not receive any - the deceased, Fred Kuhn, did.  Thus Kupperstein could not have violated any statute or regulation relating to recovery by EOHHS of MassHealth benefits, whether by fraud or otherwise.

EOHHS also argues in the dischargeability complaint that the debt is subject to §523(a)(7), a version of the police power exception.  In relevant part, that exception to discharge provides that a debt is not dischargeable "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, ...".  The problem with that allegation is that the debt at issue manifestly <u>is</u> for actual pecuniary loss, and is not "a fine payable to or for the benefit of a governmental unit" – it is not a "fine" at all. Instead, it is reimbursement for attorney fees and costs.  The civil sanctions imposed by the Bristol Probate Court were initiated by EOHHS (which makes them civil in nature), and sought reimbursement of expenses it incurred in prosecuting (if not persecuting) the case against Kupperstein, and money that Kupperstein allegedly received from tenants in the property and thus "stole" (as the Probate Court called it) from EOHHS.  Leaving aside the outrageous and false allegation that Kupperstein "stole" anything since the money never "belonged" to EOHHS, indisputably he did not receive any money from EOHHS.  The allegation is based, at least in part, on the Bristol Probate Court's finding that the deed from Thibodeau to Kupperstein (or the real estate trust he formed) was fraudulent and invalid.  Again, the problem with that argument is that Judge Lauriat, in the Superior Court, found otherwise:

> HHS seeks a declaratory judgment, pursuant to G.L. c. 231A, § 2, that Thibodeau's transfer of the Property to Sheedy is unenforceable because it was done without authorization from the Probate Court.  It also seeks rescission of the deed transferring the Property to Sheedy, on the same ground.
>
> Upon the Probate Court's allowance of the Will, title to the Property passed to Thibodeau by operation of the Will. *Milton* v. *Ladd,* 348 Mass. 762, 764 (1965) ("Upon the allowance

of [the] will, title to the locus passed directly to . . . the devisee under the will, and related back to . . the date of [decedent's] death"). If an administrator wishes to sell real property in order to satisfy debts of the estate, he or she must apply to the Court to do so. However, HHS cites no authority, and the court is aware of none, that would require Thibodeau, acting in her *individual* capacity, to obtain permission from the Probate Court to convey the Property once the Will was allowed. To the contrary, the Massachusetts Legislature has defined the conditions under which real property of an estate that has been sold by an heir or devisee may be subject to sale in order to satisfy the debts of an estate. See G. L. c. 202, § 20. Accordingly, HHS is not entitled to a declaratory judgment that transfer is unenforceable, nor to rescission of the transfer, by reason of Thibodeau's failure to obtain permission from the Probate Court prior to selling the property. Therefore, its motion must be denied as to Counts I and II, and summary judgment shall enter for the Defendants on those counts.

The appellees also bandy "bad faith" frequently in their papers, without really explaining why. Seeking a remedy that the law allows is not bad faith. In re Miller, 113 BR 98, 104 (Bankr. D. Mass. 1990) ("The Debtor can hardly be faulted for having done what the law permits him to do.") "The term 'good faith' is not easily defined and the requirement is not capable of pragmatic and mechanical application. In the last analysis it is the same as pornography, one cannot define it but will readily recognize it when one sees it." In re Noll, 172 B.R. 122 (Bkrtcy.M.D.Fla. 1994), *citing* Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Stewart, J.). The obvious forum shopping engaged in by EOHHS – in commencing two separate actions in different courts seeking the same relief – would appear to be the very icon of bad faith, especially since the Suffolk Superior Court reached conclusions that appear to be diametrically opposite to those of the Bristol Probate Court. *See generally* Leahy v. L. 1526, Am. Fed. Of St., County, & Mun. Emp., 399 Mass. 341 (1987) (suggesting that forum shopping to seek undue advantage – as occurred in this case – would be improper). Seeking bankruptcy relief from a relentless and heartless governmental creditor is not bad faith.

Ultimately, the label applied by the state court is not controlling. Hicks v. Feiock, 485 US 624 (1988); In re Kave, 760 F. 2d 343 (1st Cir. 1985). In In re Peckham, 442 BR 62, 80 (Bankr. D. Mass. 2010), bankruptcy Judge Feeney quoted the Ninth Circuit Bankruptcy Appellate Panel: "Whether contempt sanctions are nondischargeable accordingly depends not on whether they are labeled as `contempt,' but on whether the conduct leading to them was `willful and malicious."

Suarez v. Barrett (In re Suarez), 400 B.R. 732, 736-37 (9th Cir. BAP 2009).  As in Parker v. United States at 71, "There is no doubt that the contempt proceeding in the case at bar was instituted and maintained throughout as one of civil contempt. This is true, despite the fact that the petition for attachment for contempt was filed by the United States."  It is vanishingly unlikely, therefore, that the appellees will prevail in their adversary proceedings against Kupperstein.

For all of the foregoing reasons, granting relief from the automatic stay was error, and should be reversed.

*Whether EOHHS should be held in contempt for violating the automatic stay*

As the foregoing argument shows, the bankruptcy court erred in granting relief from the automatic stay since EOHHS' purpose was the collection of a presumptively dischargeable debt. That court compounded the error when it held that EOHHS' actions did not violate the automatic stay since it completely disregarded the distinction between civil and criminal sanctions in its Order filed on August 22, 2018.

Curiously, the bankruptcy court stated:  "Any activity involving money is a pecuniary matter but not every activity involving money is an attempt to enforce a pecuniary interest. A court's imposition of a monetary sanction to punish misconduct and its subsequent efforts to enforce that sanction are not for a pecuniary purpose even though they involve the payment of money."  Firstly, the Probate Court's orders were not for the purpose of punishing misconduct, which arguably would be criminal in nature[9].  Instead, they were for the purpose of coercing Kupperstein to pay EOHHS its attorney fees and costs, as well as, apparently, the rents that Kupperstein and his "cohort", Thomas Sheedy, supposedly "stole".   Secondly, the statute is crystal clear – the police power exception does NOT allow the collection of money, even for criminal sanctions.

It is well-settled that the automatic stay is the "default position", In re Atlas IT Export Corp., 761 F. 3d 177, 184 (1st Cir. 2014), *citing* Soares v. Brockton Credit Union (In re Soares), 107

---

[9] It bears repeating that there is no evidence that the mandatory criminal defendant protections – i.e., Miranda warning and public defender – were afforded Kupperstein.  *See* Kave, *infra.*

F.3d 969, 975 (1ˢᵗ Cir. 1997). It "springs into being immediately upon the filing of a bankruptcy petition", and remains in effect until the bankruptcy court says otherwise, <u>Soares</u> at 976. It is "among the most basic of debtor protections under bankruptcy law." <u>Id</u>., *citing* <u>Midlantic Nat'l Bank v. New Jersey Dep't of Envir. Protection</u>, 474 US 494 (1986). The court went on to observe that "In order to secure these important protections, courts must display a certain rigor in reacting to violations of the automatic stay." <u>Id</u>.

In <u>Atlas</u>, *supra*, the court acknowledged that the automatic stay is like an injunction, but not quite, because it is automatic; no judge has "sifted" the relevant factors. While that makes sense, some bankruptcy courts have taken a different view. In <u>In re Sayeh</u>, 445 BR 19, 27 (Bankr. D. Mass. 2011), the court unambiguously called the automatic stay an injunction, and noted that violation of it is enforceable through 11 USC §105 as a civil contempt. *See also* <u>In re Odom</u>, 570 BR 718 (Bankr. ED PA 2017).

It is equally well-settled that an intent to violate the stay is not necessary, only that the action taken violated it. <u>Fleet Mortg. Group, Inc. v. Kaneb</u>, 196 F. 3d 265, 269 (1ˢᵗ Cir. 1999). In order to recover damages pursuant to the statute, however, the violation must have been "willful", and courts must presume that the violation was deliberate if the creditor had notice of the stay and took the action anyway. <u>Id</u>. A good faith belief that the stay does not apply is not exculpatory. *Cf.* <u>IRS v. Murphy</u>, 892 F. 3d 29 (1ˢᵗ Cir. 2018) (discharge injunction). There is no doubt that the appellees had notice of the stay, and thus violated it willfully.

Recently, the Supreme Court addressed a similar issue: whether a violation of the discharge injunction may result in the creditor being held in civil contempt. <u>Taggart v. Lorenzen</u>, 139 S. Ct. 1795 (June 3, 2019). The court unambiguously said yes, "if there is no fair ground of doubt as to whether the order barred the creditor's conduct." No doubt, creditors will attempt to import that holding to automatic stay violations[10]. The First Circuit's decision in <u>Atlas</u> explains why that attempt should fail because unlike the automatic stay, the discharge injunction <u>is</u> an order of the court, entered after due deliberation of all of the relevant factors concerning whether a

---

[10] It does not appear that any decisions on that point have been issued as yet.

discharge should be granted; that is, a discharge is not "automatic". *Cf.* United Student Aid Funds, Inc. v. Espinosa, 559 US 260 (2010) (chapter 13 plan should not be confirmed just because no one objected to confirmation; rather the bankruptcy court should make an independent determination whether the plan complies with the statute).

Even if the "no fair ground" standard applies to stay violations, it is of no help to the appellees here because they were told, unambiguously, that the stay <u>did</u> bar their proceeding in the Superior Court. That the Probate Court reached a different conclusion is of no moment because the Probate Court had no jurisdiction to decide the issue and its decision is not binding. In re Cavanaugh, 271 BR 414, 423 (Bankr. D. Mass. 2001), *quoting extensively from* In re Gruntz, 202 F. 3d 1074 (9th Cir. 2000).

There is no dispute that EOHHS knew that there was an automatic stay in place. Its post-petition actions in the Probate Court violated the automatic stay and were done willfully. If it had any "fair ground of debt", which is denied, it should have come into the bankruptcy court immediately and sought relief via a "comfort order". *See* In re Herrera, 589 BR 444 (Bankr. App. Panel, 1st Cir. 2018).

For all of the foregoing reasons, Kupperstein avers that EOHHS willfully violated the automatic stay, and that the bankruptcy court erred in holding otherwise and denying Kupperstein's motion for sanctions. Accordingly, the bankruptcy court should be reversed and the matter remanded for determination of the amount of sanctions.

*[balance of this page intentionally left blank]*

## CONCLUSION

For all of the foregoing reasons, this court should reverse the bankruptcy court and order that the automatic stay is in effect, remand for determination of the amount of sanctions, and grant all such other relief as Kupperstein may be entitled to in the circumstances, including release from incarceration if that has occurred, and attorney fees and costs for this appeal.

January 4, 2020

<div style="margin-left:50%">

Respectfully submitted,.
Donald C. Kupperstein
By his attorney,

/s/   *David G. Baker*
David G. Baker, Esq.
236 Huntington Avenue Room 317
Boston, MA      02115
617-340-3680
BBO# 634889

</div>

### Certificate of Service

The undersigned states upon information and belief that the within Opening Brief (Amended) was served on the appellees and interested parties named below by the court's CM/ECF system.

<div style="margin-left:50%">

/s/   *David G. Baker*
David G. Baker, Esq.

</div>

- Roger C. Stanford    rstanford@msmw-law.com
- David B. Madoff    madoff@mandkllp.com
- Paul T. O'Neill    Paul.O'Neill@state.ma.us
- Mark C. Rossi    mcr@bostonianlegal.com, bostonian.ecf@gmail.com